**Mark EGGER**

v.

**UNITED STATES POSTAL SERVICE
and Leon Waters.**

Civ. A. No. 76–41–C.

United States District Court,
W. D. Virginia,
Charlottesville Division.

June 30, 1977.

William R. Huss, Charlottesville, Va., for plaintiff.

Robert S. Stubbs, III, Asst. U. S. Atty., Roanoke, Va., for defendants.

## OPINION and JUDGMENT

DALTON, District Judge.

This action for declaratory and injunctive relief involving an alleged right to door-to-door mail service is before the court on cross motions for summary judgment on the basis of memoranda and supporting exhibits submitted by each party and a stipulation of material facts. The court has original jurisdiction over this action pursuant to 39 U.S.C. § 409(a). In accordance with the stipulation of material facts the court finds that the plaintiff is a junior undergraduate student at the University of Virginia and resides in the university owned Lambeth Field apartment complex for university student not accompanied by families. He and five other university students lease an apartment containing three bedrooms, two full baths, a fully equipped individual kitchen, and a living room. Although, the Lambeth Field apartments are equipped with Postal Service approved receptacles and the University of Virginia has requested direct mail delivery to the complex the Postal Service has declined to extend direct delivery to these apartments on the basis of an interpretation of its regulations. As a result the Postal Service and the University of Virginia have arranged for the university to receive mail addressed to Lambeth Field from the Postal Service in bulk and for the university's employees to sort it and distribute it to the individual mail receptacles at Lambeth Field. The university has charged the plaintiff a seven dollar fee for this year's service to his mail receptacle. While the Postal Service refused to extend direct delivery to plaintiff's apartment complex, they do extend such delivery to structurally similar university apartments at 583 Brandon Avenue which are also assigned solely to university students unaccompanied by families. When the Postal Service learned that the Brandon Avenue apartment complex was occupied solely by unmarried students they suspended direct delivery and provided only delivery in bulk. However, the Postal Service eventually resumed direct delivery to 583 Brandon Avenue in accordance with Postal Service policy

that carrier service once extended, even if extended erroneously, will not be terminated. The Postal Service also provides direct delivery to individual mail receptacles at the university's family housing complex which is structurally similar to the Lambeth Field complex. In addition, the Postal Service provides direct mail delivery to unmarried students enrolled at the University of Virginia who reside in structurally similar nonuniversity owned apartments throughout the Charlottesville, Virginia community. Mail may be addressed to tenants of Lambeth Field, 583 Brandon Avenue or university family housing by using the tenant's apartment number and the name of the apartment building. Mail addressed to residents of university dormitories may be addressed using room numbers and dormitory name. The plaintiff alleges that defendants' refusal to provide him with direct mail delivery at his Lambeth Field apartment and defendants' delivery policies at the university in general violate applicable Postal Service regulations and constitute an undue and unreasonable discrimination among users of the mails in violation of 39 U.S.C. § 403(c). The plaintiff asks the court to permanently enjoin the defendant from refusing to make direct individual mail delivery to his apartment.

On August 12, 1970 Congress, acting pursuant to Article I, Section 8, Clause 7 of the United States Constitution, enacted the Postal Reorganization Act, 84 Stat. 719, 39 U.S.C. § 101 et seq., which abolished the Post Office Department and established, as an independent establishment of the executive branch, the United States Postal Service. 39 U.S.C. § 201. The Postal Service is directed to provide prompt, reliable, efficient and cost effective service to patrons in all areas at fair and reasonable rates. 39 U.S.C. §§ 101(a), 403(a). The Postal Service is charged with the responsibility of maintaining an efficient system of mail delivery nationwide. 39 U.S.C. § 403(b)(1). Indeed, the Postal Service is specifically empowered to provide for the delivery of the mail. 39 U.S.C. § 404(a)(1). In order to accomplish the objectives of the Act the Postal Service is authorized to adopt, amend, and repeal such rules and regulations as it deems necessary. The regulations of the Postal Service include the Postal Service Manual, Regional Instructions and other regulatory issuances and directives of the Postal Service. 39 C.F.R. § 211.2(a)(2), (3). All regulations of the former Post Office Department in effect at the time the Postal Service commenced operation continue in effect unless subsequently modified or repealed by the Postal Service. 39 C.F.R. § 211.2(d).

Initially the plaintiff contends that the Postal Service's refusal to provide him with direct delivery at his Lambeth Field apartment violates Postal Service regulations which he maintains entitle him to direct delivery. Plaintiff argues that since the residential unit he leases from the university is structurally speaking an apartment, he is entitled under § 155.61[1] of the Postal Service Manual (hereinafter PSM) to direct delivery of mail to his individual receptacle. He argues that the Lambeth Field complex cannot be considered a residence hall since it structurally resembles an apartment complex. While the Postal Service admits that the Lambeth Field complex satisfies the preconditions for consideration for direct mail delivery, assuming plaintiff's residence is treated as an apartment, they correctly note that satisfaction of these preconditions does not automatically entitle Lambeth Field to direct delivery. Indeed, section 155.1(g) PSM[2] provides that a combination

---

1.  § 155.61 PSM—Requirements for Delivery
    The delivery of mail to individual boxes in apartment houses, family hotels, residential flats, and business flats in residential areas containing three or more apartments having a common street entrance or common street number is contigent [sic] on the installation and maintenance of Postal Service approved mail receptacles, one for each apartment, including resident manager and janitor, unless the management has arranged for the mail to be delivered at the office or desk for distribution by its employees. The cost of receptacles and their installation is paid by the owner of the building.

2.  § 155.1 PSM—Requirements for Establishing Delivery Service

of delivery methods should be considered to provide adequate service to all residential and business sections of the community. The court notes that even if the Lambeth Field housing units are considered as apartments, the University of Virginia, as manager of the complex, could arrange with the Postal Service, as it has done, to have the mail delivered in bulk to the university and distributed by its employees. § 155.61 PSM. Plaintiff also asserts that section 154.11 PSM which states in pertinent part that, "The addressee may control delivery of his mail. In the absence of a contrary order, the mail is delivered as addressed.", entitles him to direct delivery since his mail is addressed to him at his apartment in the Lambeth Field complex and is not addressed to him in care of the University of Virginia. Therefore, he contends that section 154.62 PSM [3] pertaining to delivery of mail to students at school does not apply to him since his mail is not addressed to him in care of the university. The Postal Service contends that while plaintiff's residence may be structurally identical to an apartment, the present method of delivery to the Lambeth Field complex is nevertheless in accord with section 154.62 PSM since plaintiff is at school. Regional Letter No. 63–118 (Defendants' Exhibit # 1), a Post Office Department Memorandum dated August 2, 1963 (Defendants' Exhibit # 2) and a Post Office Department Memorandum dated December 5, 1967 (Defendants' Exhibit # 3) which all have the force of regulations establish a Postal Service policy of bulk delivery of mail for students living in residence halls or dormitories at school. At issue in this case is the Postal Service's interpretation of the above policy as expressed in a letter dated May 12, 1976 (Plaintiff's Exhibit # 11) to the Honorable J. Kenneth Robinson from the Assistant Postmaster General. In this letter the Assistant Postmaster General states in pertinent part that,

The Postal Service considers an apartment building in which living space is assigned or administered by the college or university to unmarried students to be a residence hall. Married students living in college or university-assigned or administered housing are considered to have established a family household.

Delivery policies call for the bulk delivery of mail to college or university residence halls. However, individual delivery is provided to family households residing in an apartment building as long as approved mailbox equipment is provided by the building management.

The plaintiff challenges the Postal Service's interpretation that school-owned apartments in which living space is assigned to students unaccompanied by their families

Consideration for establishing delivery service will be given when the following requirements are met:

(a) A population of 2,500 or more within the area to be served, or 750 possible deliveries. (Postal population may vary greatly from the general census population because of different boundary interpretations and designations.)

(b) Fifty percent of the building lots in the area to be served are improved with houses or business places. Where a house or building and its yard or grounds cover more than one lot, all lots involved are considered completely built up.

(c) Streets are paved or otherwise improved to permit travel of post office vehicles at all times without damage or delay.

(d) Street signs are in place and house numbers displayed, where applicable.

(e) Right-of-ways, turnouts, and areas adjacent to roads and streets are improved so that installation and servicing of boxes will not be hazardous to the public or postal employees.

(f) Satisfactory walks for carriers where required.

(g) Approved mail receptacles or door slots are installed at designated locations. The requirements are essential to an efficient mail delivery service, and must be met before delivery is inaugurated in a community. In establishing delivery service, a combination of delivery methods should be considered to provide adequate service to all residential and business sections of a community. All establishments of delivery service must have final approval of the Regional Postmaster General or his designee.

**3.** § 154.62 PSM—Mail Addressed To Persons At Hotels, Schools, and Similar Places is delivered to the hotel or school. If the addressee is no longer at that address, the mail shall be redirected to his current address. If the forwarding address is unknown, the mail shall be returned to the post office.

are residence halls whereas married students living in a structurally identical complex are not considered to reside in residence halls. Furthermore, the plaintiff claims that his apartment does not fit the description of residence halls in the regulations. (Defendants' Exhibit # 3, paragraph II)

While the court finds plaintiff's argument about section 154.62 PSM concerning mail addressed to persons at schools plausible, the court is of the opinion that the Postal Service's interpretation of this regulation is controlling since it is not plainly erroneous or inconsistent with the regulation. *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945). The court finds that in recent years universities have been constructing student housing which is structurally closer in description to apartments than residence halls. The court agrees with the Postal Service that their interpretation of section 154.62 is a necessary adaptation to the changing living arrangements of students living in school-owned housing. The Postal Service is responsible for the development of nationwide cost-effective delivery policies and must be granted broad rule-making authority. While plaintiff's residence may structurally be identical to an apartment that fact is not determinative and the Postal Service clearly may focus on the broad delivery characteristics of various mail users. In terms of delivery policy the court agrees with defendants that there is no reason why students residing in a large school owned apartment complex solely for unmarried students should be treated with a different method of delivery than other single students on the same campus who reside in conventional residence halls merely because they reside in buildings which structurally resemble apartments. Accordingly, the court concludes that the Postal Service's policy of bulk delivery to the University of Virginia for students residing at the Lambeth Field housing complex is a reasonable interpretation of section 154.62 PSM.

The plaintiff also argues that even if defendants' delivery policy is not in violation of applicable regulations, the policy unduly and unreasonably discriminates against him as a user of the mails in violation of 39 U.S.C. § 403(c) by subjecting single students residing in Lambeth Field to different service than students living in school-owned housing with their families and students living in private housing. In providing delivery services, 39 U.S.C. § 403(c) provides that, "the Postal Service shall not, except as specifically authorized in this title, make any undue or unreasonable discrimination among users of the mails, nor shall it grant any undue or unreasonable preferences to any such user." While it is obvious that this section prohibits undue or unreasonable discrimination among users in the provision of delivery services, it is also equally obvious that the Postal Service may provide different levels of delivery service to different groups of mail users so long as the distinctions are reasonable. The goal sought by the Postal Service in the instant case by their discrimination is the efficient and economical delivery of the mail. The goal is legitimate and the only question before the court is whether the distinctions between the three groups are rationally related to the achievement of the goal. The Postal Service only provides bulk delivery for students living in school-owned housing unaccompanied by their families but provides direct door–to–door delivery to students living in school-owned housing with their families and students living in private housing. The plaintiff argues that the defendant has failed to prove that the distinction is cost effective or otherwise responsible for more efficient mail delivery and therefore is unreasonable. The Postal Service argues that the discrimination between these groups is reasonable because their experience demonstrates that the distinction is rationally related to the cost effective and efficient delivery of the mail. The Postal Service maintains that experience demonstrates that unmarried students as a group are more transitory in that they change apartments with greater frequency than married students. Consequently, defendants argue that extending

individual delivery service to unmarried students as a group is significantly more expensive than extending similar service to married students as a group. Frequent changes of address obviously have a significant effect on mail delivery and associated processing costs. Each time a student or for that matter any postal patron moves a change of address form must be processed. Indeed, one of the major advantages of bulk delivery to the landlord from the Postal Service's viewpoint is that such delivery places the responsibility for maintaining change of address forms and making address corrections for forwarding on the landlord instead of postal employees thereby effecting a cost saving and more efficient mail delivery. Although the plaintiff disputes defendants' assertion that experience demonstrates that unmarried students are more transient than married students, the court is of the opinion that even if the two groups change residences with approximately the same degree of frequency the cost in the instant case would still be higher for individual delivery to unmarried students residing at Lambeth Field where as many as six students occupy the same apartment than individual delivery to an apartment occupied by a single family. The court concludes that the difference in delivery methods to school-owned apartment complexes occupied entirely by unmarried students and those occupied entirely by married students accompanied by their families is rationally related to the achievement of the Postal Service's statutory goal of providing economical and efficient mail delivery. The court agrees with defendants that in postal delivery policy, distinctions and policy differences must often be based on the general differences between identifiable groups of mail recipients. While unmarried students residing at the Lambeth Field complex are easily identified as a group, since the complex is occupied exclusively by unmarried university students, other unmarried students living throughout the Charlottesville area are not as identifiable and are certainly not amenable to delivery in a group because they do not all live in a specifically defined location

such as Lambeth Field. The court concludes that the discrimination in delivery methods between unmarried students occupying school-owned housing as a group and similar students occupying disparate housing units in the area is rationally related to the achievement of the Postal Service's goal of economical and efficient mail delivery. The court expresses no opinion on the wisdom of the Postal Service's policy that individual delivery service, once extended, even if extended erroneously, will not be terminated. This policy enables 583 Brandon Avenue to receive individual delivery even though it is structurally identical to Lambeth Field and occupied exclusively by unmarried students. As a national policy, the Postal Service does not extend individual delivery to unmarried students residing in school-owned apartment complexes occupied exclusively by unmarried university students.

Accordingly since the court finds that no genuine issue of material fact exists and that defendants are entitled to judgment as a matter of law, the court grants defendants' motion for summary judgment and orders this case stricken from the docket.