Carl A. CURRIER, et al., Plaintiffs,

v.

William J. HENDERSON,
et al., Defendants.

No. C01–0156L.

United States District Court,
W.D. Washington
at Seattle.

Jan. 30, 2002.

David B Girard, Casey Trupin, Columbia Legal Services, Seattle, Andrew W Ko, Columbia Legal Services, Everett, for Carl A Currier, David Bar, Willard Johnson, Seattle Housing and Resource Effort, a Washington non-profit corporation, individually and on behalf of others similarly situated, plaintiffs.

Robert Maxwell Taylor, Alicia Wiltz Fenrick, U S Attorney's Office, Seattle, for William J Henderson, Postmaster General of the United States, individually and in his official capacity, Dale R Zinser, Seattle District Manager of the United States Postal Service, individually and in his official capacity, United States Postal Service, defendants.

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

LASNIK, District Judge.

This matter comes before the Court on defendants' motion to dismiss plaintiffs' claims for lack of subject matter jurisdiction and for failure to state claims upon which relief can be granted. For the following reasons, defendants' motion is granted.

### BACKGROUND

This action was brought by Carl Currier ("Currier"), David Bar ("Bar") and Willard Johnson ("Johnson"), three homeless individuals in Seattle, and Seattle Housing and Resource Effort ("SHARE"), an advocacy group that advocates on behalf of the Seattle homeless. Defendants are former and current officials of the United States Postal Service ("Postal Service") and the Postal Service itself.

In May and June of 2000, the individual plaintiffs inquired about three services offered by the Postal Service: postal box rental, no-fee postal boxes and "General Delivery." As described in affidavits by

officers of the Postal Service, postal boxes are available for a fee to customers who can identify their physical addresses. (Declaration of Robert L. Nelson ("Nelson Decl.") ¶ 9). Before October 9, 2001, homeless people who wanted to rent postal boxes could do so if they were personally known to the postmaster or box clerk, submitted identification such as a driver's license, or provided a verifiable point of contact such as a shelter or public service office. (Nelson Decl. ¶ 12.) Since October 9, 2001, the Postal Service has tightened the regulations to require that homeless people provide a verifiable point of contact to be eligible to rent a postal box even if they are known to the postmaster or provide the proper identification. (Factual Addendum to Federal Defendants's Mot. to Dismiss at 3.)

Certain customers are provided no-fee postal boxes under the "Group E Rate" program. (Nelson Decl. ¶ 10.) These are customers with physical addresses to whom the Postal Service does not provide carrier service for operational or policy reasons. For instance, the Postal Service could choose not to deliver to a house if the area is one of low density or if a person resides within a quarter mile of a rural post office. Such customers would be eligible for no-fee postal boxes. (Declaration of John Dorsey ("Dorsey Decl.") ¶ 5–14.) Group E Rate is not available in urban areas or large cities because the Postal Service delivers mail to all physical delivery points in such areas. Homeless people, as well as RV owners, merchant seamen, itinerant farm workers, construction workers who move with their work, persons living on a boat or traveling with a circus and people who camp in remote sites are ineligible for this service. (Dorsey Decl. ¶ 15.)

Finally, "General Delivery" service can be useful for a person who does not have a physical address. Such a person can re-ceive mail addressed to his or her name, with the designation "General Delivery, [City Name]." The mail is held for pickup at a designated post office for 30 days. In any large city with multiple stations or branches, General Delivery is available at only one designated facility. Even though General Delivery is intended as a temporary means of getting mail, a person may receive General Delivery indefinitely. (Nelson Decl. ¶ 11.)

Plaintiffs allege that they encountered various forms of resistance when they tried to avail themselves of the above services. All were told they were ineligible for no-fee postal boxes and that they could get General Delivery service only at the Main Post Office at Third Avenue and Union Street in Seattle but nowhere else in the city. Bar and Currier were told that they could not get postal box service without providing a physical address and that they could get General Delivery service for only 30 days. Currier was not allowed to rent a postal box despite providing an identification card from a shelter. Johnson was allowed to apply for a postal box after he provided his driver's license. Most of the refusals faced by the plaintiffs are built into Postal Service regulations.

Plaintiffs allege violations of Postal Service regulations, the Postal Reorganization Act ("PRA"), Administrative Procedure Act ("APA"), the First Amendment and the Equal Protection component of the Due Process clause of the Fifth Amendment. Plaintiffs seek declaratory and injunctive relief as well as damages.

Defendants have filed a motion to dismiss the claims against the individual officers, to dismiss the claims alleging violations of regulations and statutes on jurisdictional grounds and to dismiss the constitutional claims for plaintiffs' alleged failure to articulate them.

## *ANALYSIS*

### A. CLAIMS AGAINST INDIVIDUAL DEFENDANTS

██ Defendants seek to dismiss claims against William Henderson ("Henderson"), the former Postmaster General, and Dale Zinser ("Zinser"), the Seattle Postal District Manager, in their individual and official capacities. Plaintiffs have not opposed dismissal of these defendants. There is no suggestion that Henderson and Dale were personally involved in any way in the alleged violations, which is a requirement in this Circuit. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989). In similar circumstances, the Court of Appeals for the District of Columbia Circuit has held that "actions of this sort should be brought only against the Postal Service itself." *National Association of Postal Supervisors v. Postal Service*, 602 F.2d 420, 423 n. 1 (D.C.Cir.1979).

This Court holds that claims against Henderson and Zinser shall be dismissed.

### B. SUBJECT MATTER JURISDICTION OF THIS COURT

██ Federal courts are courts of limited jurisdiction. Generally, "[i]t is incumbent upon the plaintiff properly to allege the jurisdictional facts, according to the nature of the case." *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 182, 56 S.Ct. 780, 80 L.Ed. 1135 (1936). In addition, claims against governmental entities such as the Postal Service need to cross the hurdle of sovereign immunity which these entities enjoy. *See Cohens v.*

*Virginia*, 6 Wheat. 264, 19 U.S. 264, 411–12, 5 L.Ed. 257 (1821) (holding "that no suit can be commenced or prosecuted against the United States"); *Franchise Tax Board of California v. Postal Service*, 467 U.S. 512, 516–17, 104 S.Ct. 2549, 81 L.Ed.2d 446 (1984). Sovereign immunity can, however, be waived by Congress, allowing courts to assert jurisdiction over such claims. *F.D.I.C. v. Meyer*, 510 U.S. 471, 475, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994). Here, plaintiffs have alleged that this Court has subject matter jurisdiction pursuant to 28 U.S.C § 1331,[1] 28 U.S.C. § 1339,[2] and 39 U.S.C. § 409(a).[3]

In asserting that this Court's jurisdiction over their claims is proper under 39 U.S.C. § 409(a), plaintiffs point to the language of the statute, which states that "the United States district courts shall have original but not exclusive jurisdiction over all actions brought by or against the Postal Service." 39 U.S.C. § 409(a). (Plaintiffs' Resp. to Defendants' Mot. to Dismiss ("Plaintiffs' Resp") at 5.)

██ As acknowledged by plaintiffs, the Ninth Circuit has held that the statute "does not confer subject matter jurisdiction." *Janakes v. Postal Service*, 768 F.2d 1091, 1093 (9th Cir.1985) (quoting *Peoples Gas, Light & Coke Co. v. Postal Service*, 658 F.2d 1182, 1189 (7th Cir.1981)). Plaintiffs urge this Court to ignore *Janakes* because the Ninth Circuit stated that the real purpose of 39 U.S.C. § 409(a) was to "remove[ ] the barriers of sovereign immunity." *Janakes*, 768 F.2d at 1093. Plaintiffs point to *Franchise Tax*, a Supreme

---

1. 28 U.S.C. § 1331 reads: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

2. 28 U.S.C. § 1339 reads: "The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to the postal service."

3. 39 U.S.C. § 409(a) provides that the "United States district courts shall have original but not exclusive jurisdiction over all actions brought by or against the Postal Service. Any action brought in a State court to which the Postal Service is a party may be removed to the appropriate United States district court under the provisions of chapter 89 of title 28."

Court case decided one year after *Peoples Gas,* in which the Court assumed that it was another statute, 39 U.S.C. § 401(1), that was the "statutory waiver of immunity." *Franchise Tax,* 467 U.S. at 517, 104 S.Ct. 2549.[4] Given this inconsistency, plaintiffs urge this Court to read 39 U.S.C. § 409(a) as what it seems to be: a conferral of subject matter jurisdiction "in cases involving the Postal Service." (Plaintiffs' Resp. at 4.)

Despite the seeming inconsistency between the approaches of *Janakes* and *Franchise Tax,* the substance of the analysis suggested by each is similar. Under *Janakes,* which adopted without comment the holding in *Peoples Gas,* subject matter jurisdiction under 39 U.S.C. § 409(a) is proper only when a party can point to a substantive legal framework that creates the cause of action. *See Peoples Gas,* 658 F.2d at 1189. In the *Janakes/Peoples Gas* line of analysis, then, the focus is on finding a substantive legal framework, which, in turn, depends at least partially on Congressional intent. *Id.* at 1190.

Under the analysis suggested by *Franchise Tax* and other Supreme Court decisions, the emphasis is placed on whether sovereign immunity for a federal entity has been waived. In *Franchise Tax,* the Supreme Court considered the Postal Service's immunity waived under 39 U.S.C. § 401(1). *See Franchise Tax,* 467 U.S. at 519, 520, 104 S.Ct. 2549. However, the Court did not assume that immunity was waived without limits. In fact, the Court stated that "intent to waive immunity and the scope of such a waiver can only be ascertained by reference to underlying congressional policy." *Franchise Tax,* 467 U.S. at 521, 104 S.Ct. 2549. The issue in that case was whether an order to withhold wages issued by a California administrative agency pursuant to a state statute

fell within the scope of the waiver. The Court found that Congress had intended that the Postal Service's liability would be "the same as that of any other business" and immunity was waived because the "order to withhold has precisely the same effect on [the Postal Service's] ability to operate efficiently as it does on that of any other employer subject to the California statute." *Id.* at 520–23, 104 S.Ct. 2549. Therefore, the analysis employed in *Franchise Tax* also leads to an inquiry into Congressional intent.

Since the *Franchise Tax* decision, the Supreme Court has stated that waivers of immunity by sue and be sued clauses are to be construed broadly and "cannot be limited by implication unless there has been a 'clea[r] show[ing] that certain types of suits are not consistent with the statutory or constitutional scheme, that an implied restriction of the general authority is necessary to avoid grave interference with the performance of a governmental function, or that for other reasons it was plainly the purpose of Congress to use the sue and be sued' clause in a narrow sense.'" *Meyer,* 510 U.S. at 480, 114 S.Ct. 996 (quoting *Federal Housing Administration v. Burr,* 309 U.S. 242, 245, 60 S.Ct. 488, 84 L.Ed. 724 (1940)).

Keeping these principles in mind, the Court turns to the issues raised in the motion before it.

Congress passed 39 U.S.C. § 401 as part of the Postal Reorganization Act of 1970 ("PRA") that created the Postal Service. In enacting the PRA, Congress abolished the Post Office Department, which had delivered mail since 1789, and established the Postal Service as a quasi-independent agency under the direction of an 11–member Board of Governors. The legislative

4. 39 U.S.C. § 401(1) reads in pertinent part: "The Postal Service Shall have the following general powers: (1) to sue and be sued in its official name ..."

history makes it clear that the main goal of the PRA was to make the Postal Service an efficient, self-sustaining organization with improved labor-management relations. The legislation was intended to "[e]liminate serious handicaps that are now imposed on the [P]ostal [S]ervice by certain legislative, budgetary, financial, and personnel policies that are outmoded, unnecessary, and inconsistent with modern management in business practices that must be available if the American public is to enjoy efficient and economical postal service." H.R.Rep. No. 91–1104, 91st Cong.2d Sess. at 2 (1970). The case law acknowledges this Congressional mandate. *See, e.g., Peoples Gas,* 658 F.2d at 1196 (reviewing legislative history and concluding that the PRA sought to "protect the public's interest in efficient and economical postal service"); *Franchise Tax,* 467 U.S. at 519–20, 104 S.Ct. 2549 (noting that Congress "indicated that it wished the Postal Service to be run more like a business than had its predecessor, the Post Office Department"); *Loeffler v. Frank,* 486 U.S. 549, 556, 108 S.Ct. 1965, 100 L.Ed.2d 549 (1988) (noting that by passing the PRA, Congress created liability for the Postal Service that was the "same as that of any other business" so that sovereign immunity was waived in the case of a claim for pre-judgment interest); *Far West Federal Bank, S.B. v. Office of Thrift Supervision– Director,* 119 F.3d 1358, 1367 (9th Cir. 1997) (comparing the waiver of sovereignty of the Postal Service with the corresponding waiver of the FDIC and noting that the former was related to the Postal Service's status as a commercial enterprise);

*UPS Worldwide Forwarding, Inc. v. U.S. Postal Service,* 66 F.3d 621, 634 (3rd Cir. 1995) (noting that "Congress repeatedly indicated that a primary purpose underlying the PRA was to require the Postal Service to discard its system of political patronage and bureaucratic decision-making in favor of modern business practices").

However, the agency is clearly not an ordinary profit-seeking commercial enterprise. It still retains the public service features of a governmental entity. Under the PRA, the Service is to be "operated as a basic and fundamental service provided to the people by the Government of the United States." 39 U.S.C. § 101(a). It is not to be motivated solely by profit but "shall have as its basic function the obligation to provide postal services to bind the Nation together through the personal, educational, literary, and business correspondence of the people." *Id.*

 Under these principles, the Court holds that there is no waiver of immunity, no substantive legal basis and no jurisdiction over claims asserted under Postal Service regulations.[5] The Court relies on its analysis of the legislative history of the PRA and agrees with the court in *Unicover Corp. v. Postal Service,* 859 F.Supp. 1437, 1443 (D.Wyo.1994) that "[g]enerally, the Postal Service's regulations do not create a cause of action of their own force." Any other resolution would fly in the face of Congressional intent to allow the Postal Service to operate without excessive constraints. Therefore, all claims alleging violations of the Postal Service regulations shall be dismissed for lack of subject matter jurisdiction.[6]

---

5. The relevant Postal Service regulations for the purpose of this action are Domestic Mail Manual § D910 and Postal Bulletin 21877. (Compl.¶¶ 75, 82.)

6. This holding is the same when the Court considers the effect of 39 U.S.C. § 409(a), 28 U.S.C. § 1331 or 28 U.S.C. § 1339, since, as

explained above, a waiver of immunity is a pre-requisite for jurisdiction.

It should also be noted that some violations of Postal Service regulations have been conceded by the Service. The Service has attempted to address these matters by reminding its personnel of the rules regarding rentals of postal boxes and those regarding General

█ Furthermore, this Court has no subject matter jurisdiction over claims asserted under the APA. Even though the APA, 5 U.S.C. § 706, generally subjects agency actions to judicial review, the PRA specifically exempts the Postal Service from such review. Under the PRA, "no Federal law dealing with public or Federal contracts, property, works, officers, employees, budgets, or funds, including the provisions of chapters 5 and 7 of title 5 [i.e. the APA administrative procedures and judicial review provisions], shall apply to the exercise of the powers of the Postal Service." 39 U.S.C. § 410(a).[7] Given this language, the Court must dismiss claims brought under the APA for lack of jurisdiction.[8] *See Spinks v. Postal Service,* 621 F.2d 987, 989 (9th Cir.1980). *See also National Retired Teachers Ass'n v. United States,* 593 F.2d 1360, 1365 n. 21 (D.C.Cir. 1979) (noting that "Congress expressly made portions of the APA applicable [to the Postal Service], an effort that would have been superfluous if the APA applied in any event"); *Morris v. Runyon,* 870 F.Supp. 362, 370 (D.D.C.1994) (noting that "to foster the efficiency of the redesigned

Postal Service, Congress explicitly exempted it from, *inter alia,* the Administrative Procedure Act"). There is neither a substantive legal framework, as required by *Peoples Gas/Janakes,* nor is there a waiver of sovereign immunity with respect to these claims. Therefore, all claims under the APA are dismissed for want of subject matter jurisdiction.[9]

█ However, the Court finds that Congress did waive the Postal Service's immunity to expose it to claims under 39 U.S.C. § 403(c). That statute mandates that "[i]n providing services and in establishing classifications, rates, and fees under this title, the Postal Service shall not, except as specifically authorized in this title, make any undue or unreasonable discrimination among users of the mails, nor shall it grant any undue or unreasonable preferences to any such user." The Court finds that jurisdiction over claims asserted under this statute is valid. This is not a situation where "the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Heckler v. Chaney,* 470 U.S. 821, 830, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985). Here, we have an express prohibition.[10] Just as this Court respects

---

Delivery. (Defendants' Mem. in Supp. of Mot. to Dismiss at 6.)

7. Additionally, it should be noted that the APA specifically allows Congress to override its judicial review provisions. According to the statute, its judicial review provisions apply "except to the extent that ... statutes preclude judicial review." 5 U.S.C. § 701(a).

8. Plaintiffs cite *Air Courier Conference of America v. American Postal Workers Union,* 498 U.S. 517, 111 S.Ct. 913, 112 L.Ed.2d 1125 (1991), for the proposition that 39 U.S.C. § 410(a) is not jurisdictional. However, the *Air Courier* opinion did not decide whether Congress intended to exempt the Postal Service from APA claims. *Id.* at 523, 111 S.Ct. 913. Since this Court finds that Congress did so intend, claims under the APA fail for the reason that sovereign immunity as to those claims has not been waived.

Alternatively, even if this Court assumes it has jurisdiction over the APA claims, these would be dismissed for failure to state a claim upon which relief can be granted since Congress clearly did not intend to create a cause of action against the Postal Service under the APA. Plaintiffs' contention that defendants have waived this affirmative defense has no merit. Defendants' answer clearly states that "[p]laintiffs have failed to state a claim upon which relief can be granted." (Answer at 2.)

9. Given the clear Congressional mandate, this holding is the same when the Court considers the effect of 39 U.S.C. § 409(a), 28 U.S.C. § 1331 or 28 U.S.C. § 1339. *See infra* note 7.

10. Even if the Court were to apply the four-part test articulated by the Supreme Court in *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975) rather than rely on the express wording of the statute, it would still find that there is an implied right of action.

Congress' intent to create an efficient Postal Service, it will also defer to Congress' wish, as expressed in the statute, to bar unreasonable discrimination among the Postal Service's consumers.[11]

The Court holds that subject matter jurisdiction over claims arising under 39 U.S.C. § 403(c) is proper.[12]

 Finally, the Court holds that it also has jurisdiction over claims brought under the Constitution. As the Supreme Court clarified in *FDIC v. Meyer*, even if Congress declares that an agency is to be run like a private enterprise and, as such, exempts it from certain causes of action, this does not grant immunity from constitutional claims. *See Meyer*, 510 U.S. at 483, 114 S.Ct. 996. In that case, the Court held that sovereign immunity with respect to constitutional torts was waived under the Federal Savings and Loan Insurance Corporation's sue and be sued clause. *See id.* The Fourth Circuit Court of Appeals, which considered the effect of the *Meyer*

decision on the Postal Service, held that it serves to expand liability. *See Global Mail Limited v. Postal Service*, 142 F.3d 208, 213 (4th Cir.1998) (noting that "*Meyer* does explain that the [Federal Tort Claims Act ('FTCA') ] does not serve as the only means by which a federal agency can be sued in tort, and that torts that are not cognizable under the FTCA still may be the sources of appropriate claims"). It should also be noted that forcing the Postal Service to answer to claims under the Constitution is consistent with the Service's public character. The Court has jurisdiction over claims asserted under the Constitution.[13]

### C. FIRST AMENDMENT CLAIMS

Plaintiffs' First Amendment claims are based on two policies of the Postal Service. Plaintiffs claim their First Amendment rights are violated when the Postal Service refuses to provide no-fee postal boxes to "otherwise eligible" homeless people be-

---

The Court finds that the statute was enacted to protect users such as the plaintiffs who filed this lawsuit. The language of the statute indicates that even though Congress wanted the Postal Service to become an efficient business, it did not want to allow it to engage in unreasonable discrimination. A right of action based on unreasonable or undue discrimination is therefore consistent with the overall purpose of the legislation. Finally, postal matters are and have "always been a federal concern." *Morris v. Runyon*, 870 F.Supp. 362, 371 (D.D.C.1994). This is not a situation where "the plain language of the provision weighs against implication of a private remedy." *Touche Ross & Co. v. Redington*, 442 U.S. 560, 571, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979).

**11.** It should be noted that federal courts have not shut the door on jurisdictional grounds to actions brought against the Postal Service under 39 U.S.C. § 403(c) by competitors, *see UPS Worldwide Forwarding, Inc. v. Postal Service*, 66 F.3d 621 (3rd Cir.1995); corporate customers, *see Direct Mail/Marketing Ass'n, Inc. v. Postal Service*, 501 F.2d 717 (D.C.Cir.

1974); *Aimes Publication, Inc. v. Postal Service*, 1988 WL 19618 (D.D.C.1988) and noncorporate customers *Egger v. Postal Service*, 436 F.Supp. 138 (D.C.Va.1977). *But see Shelby Resources Inc. v. Postal Service*, 619 F.Supp. 1546 (S.D.N.Y.1985); *Tedesco v. Postal Service*, 553 F.Supp. 1387 (W.D.Pa.1983); *Unicover Corp. v. Postal Service*, 859 F.Supp. 1437 (D.Wyo.1994).

**12.** Implicit in this holding is the Court's disagreement with the Postal Service's contention that plaintiffs' only recourse in challenging some of the regulations is to follow the requirements of 39 U.S.C. § 3628, a statute that details how decisions of the governors of the Postal Service may be subjected to review.

**13.** Even under *Meyer*, a federal agency can overcome the presumption of reviewability under the Constitution. However, the Court holds that the Postal Service has not met this burden. The Postal Service explains how the plaintiffs' cause of action under the Constitution would fail. This analysis goes to the merits of the constitutional tort claim and not to the jurisdictional analysis.

cause this policy "unduly restricts plaintiffs' ability to receive and send mail." (Compl.¶ 78.) Similarly, the fact that General Delivery is provided only at the Main Post Office in downtown Seattle rather than at various locations serving city neighborhoods where the plaintiffs are situated is also said to impinge on plaintiffs' First Amendment rights. (Compl.¶ 81.)

█ In the Postal Service's motion to dismiss, it claims that plaintiffs do not articulate a constitutional claim because the regulations do not "deprive [plaintiffs] of a meaningful opportunity to receive mail." (Defendants' Mot. at 20.) Therefore, its regulations should be subject to a minimal level of scrutiny, which, the Postal Service claims, they can easily withstand.

█ In considering the defendants' motion to dismiss, all factual allegations in the complaint will be assumed to be true and construed in the light most favorable to plaintiffs. *See e.g., Fireman's Fund Ins. Co. v. City of Lodi,* 271 F.3d 911, 923–24 (9th Cir.2001). The Court agrees with the plaintiffs that the right to receive mail is a fundamental right. *See, e.g., Lamont v. Postmaster General,* 381 U.S. 301, 307, 85 S.Ct. 1493, 14 L.Ed.2d 398 (1965). However, it is also true that there is no right to receive mail at the most convenient location; nor is there a right to receive a no-fee mailbox in which to receive mail. These services require subsidies by the Postal Service and the Supreme Court has "reject[ed] the 'notion that First Amendment rights are somehow not fully realized unless they are subsidized by the State.'" *Regan v. Taxation with Representation of Washington,* 461 U.S. 540, 546, 103 S.Ct. 1997, 76 L.Ed.2d 129 (1983) (quoting *Cammarano v. United States,* 358 U.S. 498, 79 S.Ct. 524, 3

L.Ed.2d 462 (1959)). This is not a situation where the Postal Service is alleged to have engaged in censorship or restricted certain types of content. In those cases, a strict scrutiny analysis suggested by plaintiffs may well be applicable. *See, e.g., Simon & Schuster, Inc. v. Members of New York State Crime Victims Bd.,* 502 U.S. 105, 112 S.Ct. 501, 116 L.Ed.2d 476 (1991). However, the Postal Service's operational regulations are subject to a lower level of constitutional scrutiny. *See United States v. Kokinda,* 497 U.S. 720, 725, 110 S.Ct. 3115, 111 L.Ed.2d 571 (1990). They are required to be reasonable and content-neutral. *See Postal Service v. Council of Greenburgh Civic Associations,* 453 U.S. 114, 131 n. 7, 101 S.Ct. 2676, 69 L.Ed.2d 517 (1981). The Court finds that the regulations of the Postal Service reasonably advance Congressionally-mandated goals of delivering mail efficiently and economically. The Postal Service could reasonably determine, as it states it has, that it cannot provide no-fee postal boxes in certain areas economically or that General Delivery by zip code in large cities does not justify the cost or the operational problems it creates.[14] (Dorsey Decl. ¶¶ 8–10.) Moreover, the regulations at issue are clearly content-neutral. The Court finds that the Postal Service has provided more than the constitutionally-required "conceivable basis" for the proposition that its regulations satisfy a legitimate governmental interest. *Cf. National Ass'n for Advancement of Psychoanalysis v. California Bd. of Psychology,* 228 F.3d 1043, 1051 (9th Cir.2000). Therefore, plaintiffs' First Amendment claims shall be dismissed.

**14.** Similarly, the stricter requirements imposed by the Postal Service since October, 2001 for those without physical addresses do not create constitutional violations. *See infra* p. 2. As the Postal Service has pointed out, the issue of security partly drove the promulgation of the new regulations. This is an eminently reasonable and rational concern.

## D. EQUAL PROTECTION CLAIMS

██ Plaintiffs claim that the Postal Service violates the Equal Protection component of the Due Process clause of the Fifth Amendment when it impermissibly discriminates against the homeless by failing to provide them no-fee postal boxes even as it provides these to others who are "similarly situated." (Compl.¶ 77.) Plaintiffs also claim that the Postal Service impermissibly refuses to provide General Delivery service to the zip codes within which the homeless reside when most of the Postal Service's other customers get mail delivered by carriers or at their neighborhood post offices. (Compl.¶ 80.)

██ The Court agrees with the Postal Service that the plaintiffs' Equal Protection claims should be dismissed. As the Court has already noted, a constitutional right is not being impinged since plaintiffs are able to rent postal boxes or get General Delivery in accordance with Postal Service regulations.[15] Therefore, the constitutional standard applicable here is "whether the challenged ... action rationally furthers a legitimate state purpose or interest." *San Antonio Independent School Dist. v. Rodriguez*, 411 U.S. 1, 55, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973). "There need not be a tight fitting relationship between the legislative goal and the result. All that is needed to uphold the ... classification scheme is to find that there are plausible, arguable, or conceivable reasons which may have been the basis for the distinction." *Jackson Water Works, Inc. v. Public Utilities Com'n of State of Cal.*, 793 F.2d 1090, 1094 (9th Cir.1986) (internal citations and quotations omitted). The Court finds that the Postal Service has met this standard. First: The distinction between customers who receive no-fee postal boxes and those that don't is reasonable. The relevant postal regulations that govern the no-fee boxes make it clear that only residents who have a physical residence or a business location at a fixed delivery point are eligible for the Group E Rate program. (Dorsey Decl. Ex. B, Postal Bulletin 21975.) The Group E Rate service is grounded in rational considerations of eliminating the disparity of service between "those customers *with fixed home or business locations* to which the Postal Service provides carrier delivery service and those to which carrier delivery service is not provided for some operational reason." (Dorsey Decl. ¶ 9) (emphasis added). Just because the Postal Service chose to minimize certain disparities does not mean that it is required to eliminate them all, particularly between people who are not similarly situated. Second: As the Postal Service makes clear, General Delivery is an expensive option that requires a transaction with a person at a counter. (Dorsey Decl. ¶ 8.) Providing this service at all 32 Seattle locations has the potential to increase costs as well as to complicate investigations of illegally shipped material. (Decl. of Eugene Broom ¶ 6.) The Postal Service could reasonably decide to provide this service only at one branch in a jurisdiction. The Court finds that constitutional requirements are amply met. Therefore, plaintiffs' Equal Protection claims should be dismissed.

## E. 39 U.S.C. § 403(C) CLAIMS

██ Under 39 U.S.C. § 403(c), "[i]n providing services and in establishing classifications, rates, and fees ... the Postal Service shall not ... make any undue or unreasonable discrimination among users of the mails, nor shall it grant any undue or unreasonable preferences to any such

---

15. The Postal Service is not engaging in improper classifications, such as those by race or gender, that would trigger a heightened level of scrutiny. The plaintiffs concede that their Equal Protection claim rests on the allegation that a fundamental right is being violated or impinged. (Plaintiffs' Resp. at 17.)

**1232**

user." 39 U.S.C. § 403(c). The Postal Service has chosen to restrict its opposition to plaintiffs' claims under this statute to allegations of lack of jurisdiction. As the Court has held above, it does retain jurisdiction over such claims. However, under the explicit language of the statute, *"reasonable* discrimination and preferences among users of the mail are permitted." *UPS Worldwide Forwarding, Inc. v. Postal Service,* 66 F.3d 621, 634 (3rd Cir. 1995) (emphasis added). The Court holds that under the facts of this case, the statute does not impose upon the Postal Service a higher standard than that demanded by the Constitution. Since the regulations have a rational relationship with the legitimate goals of providing efficient and economical service and have satisfied constitutional concerns, this Court finds that the requirements of 39 U.S.C. § 403(c) are met. Therefore, claims under the statute shall be dismissed *sua sponte. Cf. Omar v. Sea–Land Service, Inc.,* 813 F.2d 986, 991 (9th Cir.1987) (holding that "[a] trial court may dismiss a claim *sua sponte* under Fed.R.Civ.P. 12(b)(6) ... where the claimant cannot possibly win relief").

### CONCLUSION

For the foregoing reasons, plaintiffs' claims against individual defendants shall be dismissed. Plaintiffs' claims arising under Postal Service regulations and the Administrative Procedure Act shall be dismissed for lack of subject matter jurisdiction. Plaintiffs' claims that arise under 39 U.S.C § 403(c) and the Constitution shall be dismissed for failure to state claims upon which relief can be granted.

Defendants' motion to dismiss is therefore GRANTED. The Clerk of the Court is directed to enter a judgment in favor of defendants.